UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES HENRY UTSEY,

        Petitioner,

v.                                                   Case No. 5:06-cv-309-Oc-10GRJ

SECRETARY, DEPT. OF CORRECTIONS,

        Respondent.
_____

## ORDER DENYING PETITION

Petitioner initiated this case by filing a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Petition stems from Petitioner's Citrus County jury-trial convictions of first-degree murder and fleeing and eluding a law enforcement officer, for which Petitioner is serving a life sentence. Petitioner contends that the trial court violated his constitutional right to represent himself, that he was denied the effective assistance of counsel, and that the verdict form did not correctly track the language of the jury instruction concerning his insanity defense. Id. The Respondent has filed a Response (Doc. 9) asserting that the Petition should be summarily denied. Upon due consideration of the Petition, the Response, the state-court record contained in Respondent's Appendix, and Petitioner's reply (Doc. 11), the Court concludes that the Petition must be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. See Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## Procedural Background

Petitioner was represented by appointed counsel. On May 21, 2001, the State filed notice of intent to seek the death penalty. On January 17, 2002, Petitioner filed a motion to dismiss his counsel and appoint new counsel, or to represent himself; the motion was denied following a hearing. See App. tab F. Petitioner filed subsequent *pro se* motions seeking waive counsel. The court ordered Petitioner's examination by mental health experts, and on August 8, 2002, Petitioner was adjudged incompetent to proceed to trial and was committed to the custody of the Department of Children and Families. He was declared competent to stand trial on April 4, 2004. The State stipulated that it would not seek the death penalty, and Petitioner proceeded to trial on April 14, 2004. See App. tab A.

The undisputed evidence adduced at the April 2004 trial showed that on December 27, 2000, Petitioner, armed with a handgun, drove a van in pursuit of a car driven by his mother, Barbara Utsey, into the parking lot of a convenience store. Mrs. Utsey exited her car and attempted to run away, but Petitioner chased her and shot her in the back and head, killing her. Petitioner fled in his van, but subsequently was apprehended. See App. tab A.

In support of his insanity defense, Petitioner's counsel presented the testimony of clinical psychologist Dr. Harry Krop, who had examined Petitioner and reviewed the reports of other mental health experts who had examined or treated Petitioner. Dr. Krop testified that Petitioner suffered from a serious mental illness,

2

including delusional disorder, an extreme form of paranoia. Dr. Krop testified that Petitioner had described a delusional process that included a belief that his family members and other individuals had conspired against him. In particular, among other delusions, Petitioner believed that his family had used hidden cameras to spy on him while he was engaged in sexual activity, that his father had concealed millions of dollars in overseas bank accounts, and that his family wanted to get rid of Petitioner so that he would not share in an inheritance. Dr. Krop opined that Petitioner was "more likely than not insane in terms of the criteria that I mentioned: That he was mentally ill and that he likely believed that his acts were not wrong. I would say that he recognized to some degree that his acts were illegal and his behavior afterwards certainly suggests that . . . he tried to avoid being caught." App. tab A, trial transcript at 451-92.

On cross examination, Dr. Krop conceded that, based on his interviews with Petitioner and evaluation of his history, Petitioner understood what he was doing when he killed Mrs. Utsey and his actions following the shooting in trying to evade capture showed that he know what he had done was legally wrong. Id. at 503-05. According to Dr. Krop, Petitioner's delusions led him to rationalize that his mother deserved to die. Id. at 509. Dr. Krop agreed that Petitioner did not meet the legal definition of insanity under Florida law, depending upon how "wrongfulness" is interpreted. Id. at 509, 515. On redirect examination, Dr. Krop testified that Petitioner believed that he might be vindicated at trial because he could reveal his

3

side of the story with respect to the conspiracies against him. Id. at 514. He testified that Petitioner nevertheless recognized that his actions were "illegal." Id. at 515.

The State presented the rebuttal testimony of forensic psychologist Dr. Robert Berland, who had interviewed Petitioner and reviewed his extensive treatment history. Dr. Berland testified that Petitioner suffered from a psychotic disorder, but that he understood what he was doing when he killed his mother, and recognized that it was legally wrong. Dr. Berland concluded that Petitioner did not meet the legal definition of insanity at the time of the offense. Id. at 526-57.

The trial court's instructions to the jury included the standard Florida jury instruction on the definition of "insanity":

> Insanity defined. An issue in this case is whether James Utsey was insane when the crime allegedly was committed. A person is considered to be insane when:
>
> Number one, he had a mental infirmity, disease, or defect.
>
> Two, because of this condition (a), he did not know what he was doing or its consequences or (b), although he knew what he was doing and its consequences, he did not know it was wrong.
>
> . . . .
>
> If you find that James Utsey committed the crime but have a reasonable doubt that he was sane at that time, then you should find him not guilty by reason of insanity. If your verdict is that the defendant is not guilty because insane, that does not necessarily mean he will be released from custody. I can conduct additional proceedings to determine if he should be committed to a mental hospital or given other treatment.

4

Id. at 614.

Petitioner's counsel had previously objected to the court's proposed verdict form, which provided that the jury could find that "[t]he defendant is not guilty because legally insane." Id. at 566, 622. Counsel argued that the form did not track the language of the jury instruction, which stated that the jury could find Petitioner "not guilty by reason of insanity." Id. The court overruled the objection. Id. The jury returned a verdict of that Petitioner was guilty of first degree murder. Id. at 639.

The public defender was appointed to represent Petitioner on appeal. Counsel filed a brief and motion to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious grounds for appeal. App. tab B. The only arguable issues identified for review were the trial court's refusal to change the language of the verdict form, and the trial court's determination that Petitioner was competent to stand trial. Id. The appellate court affirmed Petitioner's conviction without opinion. App. tab E.

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850 asserting that he was denied his right of self-representation and that the trial court made other errors, and that counsel was ineffective in several respects, including for failing to investigate Petitioner's claims that he had been a victim of child pornography and "voyeurism" by his parents. App. tab F.

The trial court summarily denied relief. App. tab G. With respect to

Petitioner's claim that he was deprived of his right to represent, the court noted that Petitioner had sought to have replacement counsel appointed but had not established grounds for doing so, and accordingly the motion was properly denied. Id. The court analyzed Petitioner's ineffective-assistance claims under Strickland v. Washington, 466 U.S. 668 (1984), and concluded that counsel was not ineffective for failing to investigate Petitioner's claims of abuse by his parents because the testimony at trial established that Petitioner's claims were delusional. Id. The appellate court affirmed without opinion. Id. tab K. Petitioner filed the instant Petition, which Respondent concedes was timely pursuant to 28 U.S.C. § 2244(d)(1) and fully exhausted. See Doc. 9.

## Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), the role of a federal habeas court when reviewing a state prisoner's application pursuant to 28 U.S.C. § 2254 is limited.[2] Specifically, a federal court must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding."[3] The "contrary to" and "unreasonable

---

[2] See Williams v. Taylor, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 1518-19 (2000).

[3] See 28 U.S.C. § 2254(d)(1)- (2).

application" clauses provide separate bases for review.[4] A state court's rejection of a claim on the merits is entitled to deference regardless whether the state court has explained the rationale for its ruling.[5]

## Claim (1): Right to Self Representation

Petitioner contends that he was deprived of his constitutional right to represent himself because he "did well" at the Faretta hearing but the trial court nevertheless denied his motion. Doc. 1. He contends that the trial court disregarded subsequent requests to waive counsel. Doc. 11.

The Supreme Court has held that a defendant has a right under the Sixth Amendment to represent himself but, in order to represent himself, he must "knowingly and intelligently" waive his right to counsel. Faretta, 422 U.S. 806, 835 (1975). Once a defendant invokes his right to self-representation, the trial court must conduct a hearing to determine whether the defendant understands the risks of proceeding *pro se*. The question whether a defendant is able to knowingly, intelligently, and voluntarily waive assistance of counsel is a mixed question of law and fact. See United States v. Kimball, 291 F.3d 726, 730 (11th Cir. 2002).

At the January 31, 2002, hearing on Petitioner's motion, the trial court conducted a colloquy with Petitioner during which Petitioner stated that he was 31

---

[4] Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

[5] Wright v. Secretary for the Dept. of Corrections, 278 F.3d 1245, 1255 (11th Cir. 2002) cert. denied, 538 U.S. 906 (2003); see also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004).

years old and college-educated. App. tab F. Petitioner denied that he was under the influence of drugs or alcohol. Id. Petitioner stated that his counsel seemed "reluctant to look for any evidence to some of the allegations that I made," and that counsel had advised Petitioner that "there's no evidence out there." Id. Petitioner stated that he was prepared to present his theories at trial without appointed counsel "[i]f there's no other way." Id. Petitioner stated he had never seen a live jury trial before, and explained the difference between direct examination and cross-examination as "[d]irect examination is where the defense asks the defendant and the cross-examination is where the prosecution – they question the defendant . . . ." Id. Petitioner, who at that time was facing a possible death penalty if convicted, stated that he did not understand the evidentiary standard that the prosecution would have to meet during the guilt phase of trial. The court reviewed the language of Petitioner's motion, which Petitioner conceded had been given to him by another inmate. The motion contained garbled legal phrases, and the court concluded that Petitioner did not understand the meaning of the relief sought in the motion. Id.

The court advised Petitioner that he did not have the right to pick and choose his court appointed lawyer, and Petitioner affirmed that he was not able to hire his own lawyer. Id. The court then asked Petitioner whether he wanted to represent himself and Petitioner stated "I would like the state to hire a private defense attorney for me." Id.

The court denied Petitioner's motion to dismiss his counsel and appoint

8

different counsel, and noted that "to dismiss your counsel at this point would be a manifest injustice given your lack of knowledge about the intricacies of even basically conducting a jury trial. By your own sworn testimony, you've indicated you don't really know what you'd be doing in that situation."

It is arguable whether Petitioner's motion was an unequivocal waiver of the right to counsel such that the requirements of Faretta were triggered, because it appears that Petitioner primarily sought appointment of different counsel. Further, the trial court's conclusion that Petitioner should not be permitted to waive counsel under the circumstances is supported in the record of the motion hearing, as well in the court's determination a few months later, in August 2002, that Petitioner was not competent to proceed to trial at all. Petitioner contends that the court violated his rights by disregarding or rejecting subsequent attempts to waive counsel, but such attempts predated the finding that he was not competent to proceed to trial. See Doc. 11. Petitioner does not argue that he sought to waive counsel after he was found competent to proceed. Although Petitioner suggests in his reply to the petition response that the finding that he was not competent to proceed to trial in August 2002 was erroneous, that issue was not raised in the state courts and accordingly cannot be reviewed in this Court. See 28 U.S.C. § 2254(b)(1)(A). Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law, or that the state court's decision was based on an unreasonable determination of facts.

9

## Claim (2): Ineffective Assistance of Counsel

In order to state a successful ineffective assistance of counsel claim, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that the attorney's deficient performance prejudiced the defense.[6] Both prongs must be shown in order to succeed on an ineffective-assistance claim. Further, to prove prejudice, a Petitioner must show that there is a reasonable probability that the outcome of the trial would have been different but for counsel's unprofessional errors.

When reviewing an ineffective assistance of counsel claim, the court's role "is not to grade counsel's performance;" instead, the court's role is to conduct an objective inquiry and determine "whether counsel's performance [was] reasonable under prevailing professional norms." Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (internal quotations and citation omitted). Therefore, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 1314. "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. "Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy." Id. (quoting Darden v.

---

[6] Strickland v. Washington, 466 U.S. 668, 688 (1984).

Wainwright, 477 U.S. 168 (1986)). To overcome the strong presumption in favor of competence, the petitioner bears the burden of establishing "that no competent counsel would have taken the action that his counsel did take." Id. at 1314-15.

Petitioner contends that counsel's performance was deficient because counsel "refused to investigate allegations of mitigating crimes against [Petitioner]. He refused to contact law enforcement agencies. Counsel failed to bring any of appellants prior-to-this offense counselors, or their reports, to the trial." Doc. 1. These "mitigating crimes" include "sexual harassment," and "long term video voyeurism." Doc. 11.

The state court rejected Petitioner's claim that counsel failed to investigate alleged crimes against Petitioner because the record established that such alleged crimes were a product of Petitioner's delusions. App. tab G. Petitioner points to nothing in the record that undermines the state court's finding in this regard.

As to counsel's alleged failure to call other witnesses, Petitioner provides no cogent explanation as to how any such additional testimony would have affected the outcome of the trial. "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980). To the extent that Petitioner provides any explanation as to how such witnesses' testimony would have benefitted him, his claims are wholly speculative. Petitioner has failed

11

to show that the state court's rejection of his ineffective-assistance claim was contrary to, or an unreasonable application of, Strickland.

### Claim (3) Jury Verdict Form

Petitioner contends that the jury verdict from was not consistent with the instruction to the jury on the definition of insanity. Doc. 1. It is not the province of a federal habeas court to re-examine state court determinations on state law questions. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Jury instructions are evaluated in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982). The inquiry on habeas review is whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a way that violates the Constitution. Estelle, 502 U.S. at 72 & n.4.

In this case, there is no reasonable likelihood that the phrasing of the jury verdict form was so inconsistent with the jury instruction on the definition of insanity that the jury could have been confused. The instruction stated that if the jury found that Petitioner was insane at the time of the offense within the meaning of the legal definition, it should find him "not guilty by reason of insanity." The verdict form provided that the jury could find Petitioner "not guilty because legally insane." In the context of the instructions and the trial as a whole, the Court is not persuaded that the difference in phrasing amounts to constitutional error. The state court's rejection

of this claim was not contrary to, or an unreasonable application of, federal law.

## Conclusion

For the foregoing reasons, the Petition is **DENIED** with prejudice. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 28th day of September 2009.

_____
UNITED STATES DISTRICT JUDGE

c: James Henry Utsey
   Counsel of Record